NATHANIEL SHIPMAN et al., trustees,

*v.*

GEORGE R. LORD et al.

[Filed September 25th, 1899.]

1   Where a creditor who holds security for the payment of his debt has a settlement with his debtor, and the amount of the indebtedness is determined, and the debtor executes to the creditor promissory notes for the amount, and

Shipman v. Lord.

the creditor gives the debtor a receipt which recites that, in consideration of the notes and their payment, he thereby relinquishes and discharges all claim he has on him, the creditor does not release or surrender the security, as the security will not be considered surrendered when no payment is made until it clearly appears that such was the intention of the creditor.

2. When an executor seeks to evade liability on a note executed by his decedent, a married woman, on the ground that it was given to secure another's debt, the burden of proof is on him to show that it was so given.

3. An assignment of an equitable interest in land, made by a married woman to secure another's debt, will be enforced to the extent of subjecting the land to the payment of the debt, as she cannot rescind her executed contract of suretyship.

4. Where an executor wrongfully causes land to be conveyed to himself, when he should have had it conveyed to complainants as security for a debt owing to them, they can maintain a bill in equity against him to charge the land and have it sold to pay their debt.

5. When a note owing at the time of the execution of an assignment of an equitable interest in real estate to secure an indebtedness owing by the assignor to the assignee is not mentioned in the agreement whereby such interest is assigned, it will be presumed that it was not intended to have the security include it.

6. An executor under a will which gives him a power to sell personalty and a power to mortgage and sell realty has no power to pledge the estate to carry on a partnership, nor has he power to borrow money for the purpose of improving the real estate of his decedent's estate.

7. One seeking to charge a married woman's estate for money loaned, and for which her husband personally executed evidence of indebtedness, on the ground that the loans were for the benefit of her estate, has the burden of showing that the loans were so made.

8. A cause of action barred by the statute of limitations cannot be enforced against a decedent's estate.

On final hearing.

*Mr. Edward A. Day*, for the complainants.

*Messrs. R. T. & W. B. Stout* and *Mr. Allan L. McDermott*, for the defendants.

STEVENS, V. C.

The bill is filed to charge the lands therein described with the payment of certain trust moneys alleged to have been lent by

George M. Bartholomew to Mary E. Lord in her lifetime, and to George R. Lord as her executor after her death.

By an agreement dated March 17th, 1882, made between Frederick G. Burnham and Mary E. Lord, it was recited that Burnham was about to take a conveyance of a tract of land containing about one hundred and eleven acres, situate in or near Asbury Park, in trust to sell and out of the proceeds to repay, first, the amount of cash paid therefor ($25,000); second, the amount paid for improving the same and making surveys and maps; third, the amount of the mortgage ($50,000) given by Burnham to secure the residue of the purchase-money; fourth, any expenses and disbursements that might be incurred by the written consent of Burnham and George R. Lord, the husband of Mary; and fifth, to divide the remaining proceeds of sale into three equal shares, two of which should be given to Mary E. Lord and one to Burnham. There is a further stipulation that if the said Mary should prefer and should so notify Burnham in writing, Burnham, after payment of the above sums, would convey to Mary E. Lord two-thirds of the premises then remaining unsold, retaining one-third for himself.

Nine months after this agreement was made, to wit, on December 29th, 1882, Mary died, leaving a last will, by which she constituted her husband her sole executor. The trust had not then been completely performed, and was not for several years afterwards.

At the time of her death, there was due from Mary E. Lord, or from her and her husband jointly, to one George M. Bartholomew, who was a trustee for indigent, orphan and other children under the will of David Watkinson, the following sums of money:

| | | |
|---|---:|---:|
| On the joint bond of Mary E. Lord and her husband secured by mortgage on Mrs. Lord's farm | $9,000 | 00 |
| On their joint and several note dated May 23, 1881, payable on demand | 2,958 | 52 |
| On their joint and several note dated June 22, 1881 | 675 | 00 |
| On the note of Mary E. Lord dated May 2, 1882 | 2,000 | 00 |
| Total | $14,633 | 52 |

Shipman v. Lord.

On December 1st, 1882, Mary E. Lord and her husband joined in an assignment to Bartholomew of the Burnham agreement, the consideration of which assignment is therein stated to be " $14,633.52 and other valuable considerations to us paid by George M. Bartholomew." The assignment is declared to be

"additional to any security which the said Bartholomew now has for the payment of any indebtedness due to him from us or either of us and is not to impair said security."

Bartholomew assigned the above notes and collateral to complainants, and the first question is whether the collateral may now be resorted to for the purpose of enabling the complainants to obtain payment of so much money as still remains due on the notes.

It is contended by defendants, first, that these notes have been paid in full; second, that the security of the Burnham agreement has been released or extinguished; third, that if the notes have not been paid, the statute of limitations has run against them; fourth, that as to the note of $675, Mrs. Lord stood in the position of surety only, and her promise, being that of a married woman, is unenforceable.

1) It is quite clear that the notes have not been paid. The $9,000 mortgage bears date June 23d, 1876. Only $300 was paid for interest up to May 23d, 1881. On that day Mr. and Mrs. Lord gave their joint and several note for $2,958.52, being the interest then due on the mortgage, as they computed it. On January 31st, 1885, Lord, as executor of his deceased wife, sold the property, subject to the above mortgage, and from the proceeds of the sale paid Bartholomew $3,000. There was then due for—

| | | |
|---|---:|---:|
| Interest, the amount of the above note | $2,958 | 52 |
| Interest thereon, three years, eight months, eight days | 654 | 77 |
| Interest on $9,000 mortgage, three years, eight months, eight days | 2,323 | 00 |
| Total | $5,936 | 29 |
| Deduct | 3,000 | 00 |
| Still due for interest, January 31st, 1885 | $2,936 | 29 |

The purchaser subsequently paid Bartholomew the principal sum due on the mortgage, with interest, accruing from the time of his purchase, and Bartholomew surrendered the bond and mortgage to him. He retained possession of the note and subsequently endorsed upon it the following : " Interest settled to August 1, 1885, J. M. B." No payments have since been made upon it.

It is said by complainants that the $3,000 were paid on general account, and not for interest upon the $9,000 mortgage. It is said by Mr. Lord, on the other hand, that this money paid the note for $2,958.52 in full, but in this he is evidently mistaken. Bartholomew's evidence on the subject is vague in the extreme. He manifestly recollects little or nothing about it. The money coming, as it did, out of the proceeds of the sale of the farm, would naturally have been appropriated to the payment of the interest then due upon the mortgage on that farm. Bartholomew's endorsement on the note that interest was settled to August 1st, 1885, can only be correct on the theory that such appropriation was in fact made. Besides, this was the earliest debt. I think the payment should be attributed to the interest due on the bond and mortgage.

(2) The next question to be considered under this head is the effect of the settlement purporting to have been made August 4th, 1885, though actually made some months after that time. It appears that Bartholomew, having misappropriated the moneys belonging to the complainant trustees, went to Canada and there had a settlement with Lord with a view to his return. *Exhibit No. 21* is a copy of the account as stated. It includes the notes secured by the assignment and also some other notes given by Lord as executor after his wife's death. The principal and interest due upon the entire indebtedness, after crediting all payments on account of either principal or interest, is $14,869.60. This did not make up the entire amount of Bartholomew's defalcation, and so Lord, who at that time was extremely friendly to him, agreed that Bartholomew should hold the above-mentioned notes of $2,958.52 and $675, and that he would give him, in addition, a note for $13,566.48. This he did, and thereupon Bartholomew gave him the following writing :

"*George R. Lord:*

"DEAR SIR—In consideration of having and receiving three notes, viz. [describing the notes for $2,958.52, $675 and $13,566.48], all said notes to be fully paid in accordance with their terms, I hereby discharge and relinquish all claims I have upon you and upon the estate of Mrs. Mary E. Lord.

"NEW YORK, 4 August, 1885."

It is argued that this was a discharge and relinquishment of the security of the Burnham agreement. The rule of law is that a security cannot "be considered released or surrendered where no payment has been made until some act or word of the creditor is proved, clearly manifesting an intention of relinquishing or foregoing his right." *Hutchinson* v. *Swartsweller, 4 Stew. Eq. 205* (*Vice-Chancellor Van Fleet*); *Swain* v. *Frazier, 8 Stew. Eq. 326.*

Here, it will be observed, the discharge is not of all *other* claims; that is, of all claims other than the three notes, but of *all* claim. Now, such a discharge could not take effect until the three notes were paid. In order therefore to give effect to what appears to have been the intention of the parties, as we find it expressed in the writing itself, we must construe the paper as if it had read "in consideration of having and receiving three notes and of their payment in accordance with their terms, I hereby discharge," &c. This construction would relieve Bartholomew from the imputation of being willing, as trustee, to surrender a valuable security, and would appear to be the one most consistent with its terms. Moreover, having regard to what the parties were doing, viz., settling the amount of what was owing, and to the rule of law above mentioned, the word "claim" should probably be interpreted as referring to indebtedness merely and not to the collaterals securing it. I think, therefore, that Bartholomew was still entitled, notwithstanding the settlement, to the benefit of the Burnham security.

I now come to a question of more difficulty. Shortly after the settlement, Lord, as executor of his wife, entered into an agreement with Burnham, bearing date April 1st, 1886, by the terms of which, speaking very generally, Burnham agreed to convey the unsold land held by him in trust to Lord as executor.

25

Doubts having arisen as to wnether this agreement could be lawfully carried out, a bill was filed in the court of chancery by Lord as complainant against Burnham as defendant praying a specific performance. The suit appears to have been a friendly one. On June 10th, 1889, the court decreed performance, and on June 24th, 1889, a deed was givent pursuant to the decree. This terminated the Burnham trust, and it was a valid termination, so far as Burnham was concerned, not only as against Lord, but also as against Bartholomew, who, as far as the case shows, had not notified Burnham of his interest. Now, it will be remembered that this trust was, first, to take a conveyance of the land; second, to sell it; and third, after paying certain debts and expenses, to divide the net proceeds into three parts, two of which should go to Mrs. Lord and one to Burnham, with a proviso, however, that if Mrs. Lord should prefer and should so notify Burnham, Burnham would, after payment of debts and expenses, convey two-thirds of the land to Mrs. Lord *in specie* and retain one-third for himself. I have already shown that Bartholomew's interest had not been surrendered. But it was not an absolute interest. It was in the nature of a mortgage interest only. The situation, then, at the time Burnham deeded to Lord, was this : Assuming that, notwithstanding the assignment, Lord, as his wife's executor, had the right to make an election to take land instead of the proceeds of the sale of it, as he virtually did by his subsequent agreement with Burnham, it was his duty to Bartholomew to have directed Burnham to make a conveyance of that land to Bartholomew, to secure the payment of the obligations mentioned in the assignment. As he did not do this, but, with full notice of the assignment, took a conveyance to himself, Bartholomew had the right to call upon him immediately to execute a conveyance, not, as I have said, an absolute conveyance, but a conveyance in the nature of a mortgage. Bartholomew made no such demand. He retained the assignment until April 28th, 1897, when he assigned it to the complainants.

The right of Bartholomew was clear at the time, but eight years have elapsed since the right accrued, and the question

Shipman v. Lord.

arises whether the complainants are now barred by Bartholomew's laches from asserting it.   Speaking of a case of specific performance, Mr. Justice Magie, in *Meidling* v. *Trefz, 3 Dick. Ch. Rep. 644*, observed that no rule respecting the length of delay which would be fatal to relief could be laid down, but that each case must depend on its peculiar circumstances.   While the case in hand is not exactly a case of specific performance, it is so like it that the observation is, I think, fully applicable to it. Looking at its very peculiar circumstances and considering that no injustice will be done to Lord, whose position in respect of the lands remaining unsold has not been changed, I think the complainants should not be prejudiced by the delay of Bartholomew.   The cases are numerous in which a much longer period than eight years has been held to constitute no bar.

Another question now arises.   The Burnham agreement was assigned as security for the payment of indebtedness due to Bartholomew from Mr. or Mrs. Lord, or either of them.   The outstanding debts thus secured are, at present, only the joint and several notes for $2,958.52 and $675 and the note of Mary E. Lord for $2,000.   It is claimed that the statute of limitations has run against them all.   On the first two, which bear date May 23d and June 22d, 1881, respectively, there is an endorsement of interest received under date of May 23d, 1881. On the third, which bears date May 2d, 1882, there is no endorsement of interest.   In reference to the first two, there is a conflict of evidence as to whether any payment has in fact been made.   On May 21st, 1891, Mr. Lord wrote to Mrs. Bartholomew, Mr. Bartholomew being then in prison in Connecticut, "I enclose you ten dollars as requested by Mr. B."   Three dollars of this Mr. Bartholomew applied upon the note for $2,958.52, one dollar upon the note of $675 and six dollars upon the note of $13,566.48, as he says, pursuant to a prior understanding that Lord would send the money to keep the notes alive.   This Lord denies, but I think that the weight of the evidence is against him.   Consequently the notes for $675 and $2,958.52 were not outlawed, when on May 10th, 1897, the bill was filed. The statute of limitations has run against the note for $2,000,

unless, as the contention is, the payment of six dollars on the note of $13,566.48 has prevented its running. The last-mentioned note, it will be remembered, was given on the settlement of August 4th, 1885, the $2,000 note being one of the items which entered into the account. The note of $13,566.48 was signed by "George R. Lord, executor for Mary E. Lord, dec'd." The note of $2,000 was signed by Mary E. Lord, alone, in her lifetime. The note signed by George R. Lord, executor, is his individual note. *Hellier* v. *Lord, 26 Vr. 367.* It cannot be enforced against Mary E. Lord's estate. This being so, I am at a loss to understand how a payment credited upon the individual debt of George R. Lord could operate to keep alive a debt of Mary E. Lord. The debts constituted distinct causes of action; that against Mrs. Lord accrued four months after May 2d, 1882; that against Mr. Lord four years after August 1st, 1885. On what principal could a payment made in respect of the one cause of action operate to remove the bar of the statute to another cause of action against a different person? I think, therefore, there could be no recovery in an action at law upon the $2,000 note.

The question then arises whether if the note be outlawed the security may be enforced. It is well settled that although the remedy to enforce the debt may be barred, yet the lien upon the personal property pledged will remain. *Busw. Lim.* § *140.* It is also well settled that in the case of a bond and mortgage upon real estate, the statute may have barred the recovery on the bond and yet the lien upon the land will remain and may be enforced until the expiration of twenty years next after the breach of the condition upon which the right of entry accrued. *Blue* v. *Everett, 11 Dick. Ch. Rep. 455.* If, then, Lord had performed the duty of causing Burnham to make, or of making himself, to Bartholomew, a conveyance of the land as security for the sum pledged, notwithstanding the fact that the remedy at law upon the note might have been lost, the remedy in equity would have remained. But it is one of the maxims of this court that equity regards as done what in good conscience ought to have been done. *Pom. Eq. Jur.* § *364.* It seems to me,

therefore, that as far as the $2,000 note is concerned, it must still be regarded as secured by the land.

One other question remains to be considered on this branch of the case, and that is whether the note for $675 may be properly charged upon the land belonging to Mrs. Lord's estate. It is said that the money was lent to one Boud, the father of Mrs. Lord, and that the note was given to secure his debt. There is but little evidence on this subject, and that vague and unsatisfactory. No one who reads the testimony can fail to be struck with the general inaccuracy of both Mr. Bartholomew's and Mr. Lord's statements. Bartholomew swears that he lent the money to Mr. and Mrs. Lord; Lord swears that the money was lent to Boud. Neither one of these witnesses gives any particulars, and neither is corroborated by other facts or writings. The burden of proof is on Lord. *Reeves* v. *Morgan, 3 Dick. Ch. Rep. 433; Thomas* v. *Weaver, 7 Dick. Ch. Rep. 581.* As the evidence in his favor is not preponderating, the defence is not made out; but if it had been, the lien could still, I think, have been maintained on the principle laid down by the court of errors in *Warwick* v. *Lawrence, 16 Stew. Eq. 179*, where it was held that while executory contracts of suretyship are not enforceable against married women, executed contracts cannot be rescinded by them. The familiar case of a mortgage given by a married woman to secure the debt of another person is referred to in that case by the chief-justice, and he says that the contract in the bond being executory cannot be enforced against her, but the conveyance by the mortgage being executed her title may be foreclosed. In the case in hand the wife executed an assignment of the Burnham agreement, and this assignment was binding upon her whether it be looked upon as an assignment of money or of land. *Walker* v. *Dixon Crucible Co., 2 Dick. Ch. Rep. 343.* The fact that her executor wrongfully procured to himself a conveyance of that which under his power of election he elected to take as land, could not vary the rights of the parties as they had been fixed in his wife's lifetime.

The complainants, then, not having lost their right to call for a mortgage conveyance and to have the land thus burdened sold

to pay the debts owing to them, there is no reason why the court may not in this proceeding charge the debt directly upon the lands remaining in the hands of Lord as executor and order a sale, if necessary.

The complainants further insist that other notes and advances were subsequently secured by a *verbal* pledge of the Burnham agreement.

The notes and advances as to which this contention was made are the following :

| | | |
|---|---:|---:|
| Note of George M. Bartholomew, dated November 10th, 1882, to the order of George R. Lord, payable four months after date, for .............................................................................. | $1,000 | 00 |
| Receipt, dated December, 1882, given by George R. Lord to George M. Bartholomew............................................... | 500 | 00 |
| Receipt of George R. Lord, dated January 19th, 1883, for..... | 650 | 00 |
| Note of George M. Bartholomew, dated February 8th, 1883, payable to order of George R. Lord..................................... | 2,000 | 00 |
| Note of George M. Bartholomew, dated May 7th, 1883, to order of George R. Lord for.............................................. | 2,500 | 00 |
| Note of George M. Bartholomew, dated November 10th, 1883, to order of George R. Lord, endorsed George R. Lord and George R. Lord, executor................................................ | 1,000 | 00 |

The first two of these evidences of indebtedness differ from the rest in having been given in the lifetime of Mrs. Lord. As to the note of $1,000, although it was in existence when the Burnham agreement was assigned, it was not mentioned in it, is not covered by its terms, and is not one of the notes which went to make up the aggregate amount mentioned as the consideration. It must be presumed that the parties intended not to secure it by the assignment. As to the loan of $500, the evidence does not show that it was secured by the assignment either at the time it was made or afterwards.

As to the advances made after Mrs. Lord's death, it seems to me plain that they are not secured by the pledge. The evidence of pledge lacks definiteness, but, assuming it to be sufficient, it is open to this objection. If Mrs. Lord's interest in the Burnham agreement was in the nature of a partnership interest—that is, an interest in personalty—there was nothing in her will which

authorized the executor to pledge her estate for money lent to benefit such interest. He was not authorized to carry on a partnership, and he was not bound by any stipulation in the agreement made by his wife to expend money upon the land held in Burnham's name. The only powers conferred by the will were a power to sell personalty and a power to mortgage and sell realty. If, on the other hand, Mrs. Lord's interest was an interest in real estate, her executor had no power to borrow money on his note or otherwise for the purpose of improving such estate. Counsel argued that the executor had power to borrow money to pay debts, and that, having such power, the lender was not obliged to see to its application. This argument is contradictory to the complainant's case, which is based upon the ground that Bartholomew was lending money to improve Mrs. Lord's land. Bartholomew explicitly testified that that was the *only* purpose for which he lent it. Lord, on the contrary, says that the loans to him were personal loans and that the money borrowed did not go into his wife's estate. In either case the argument is untenable.

It is also contended by complainant's counsel that the money having been lent to a married women for the benefit of her estate, is chargeable against that estate. The argument is specially applicable to the note of George R. Lord for $1,000, dated November 10th, 1882, and his receipt for $500, dated December 22d, 1882, both of them having been given shortly before Mrs. Lord's death. Of course, it has no application to the money lent to Lord after she died. In point of form the note is made to Lord personally and the receipt is his personal receipt. To overcome the presumption afforded by these indications, we have Bartholomew's testimony that he lent the money to improve Mrs. Lord's property. In the case of the note, Lord testifies that the money was lent to him. In the case of the receipt, I do not find any explicit statement. The letter, if any, accompanying the note, is not produced. The letter accompanying the receipt throws no light upon it. The reference in the prior letter of December 18th is much too uncertain to warrant a reasonable inference. On the whole, the burden

of proof being on the complainant and both note and receipt appearing, upon their face, to indicate that it was the intention to make Mr. and not Mrs. Lord the debtor, I do not think the complainants have made out a case. If they had, the cause of action established against Mrs. Lord would have been one for money lent and would have been long since barred by the statute of limitations. I cannot understand how her estate could be charged with a debt no longer enforceable.